17

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARIUS LEWIS,

Petitioner,

vs.

WILLIE O. SMITH,

Respondent.
_______________________________/

CASE NO. 2:17-cv-14174
**HON. ROBERT H. CLELAND**
**MAG. R. STEVEN WHALEN**

FILED
AUG - 6 2018
CLERK'S OFFICE
DETROIT

**PETITIONER'S RESPONSE**
TO ATTORNEY GENERAL'S ANSWER IN OPPOSITION
TO PETITION FOR WRIT OF HABEAS CORPUS

Petitioner (Darius Lewis) reasserts the Statement of Facts presented in Petitioner's Memorandum of Law Supporting Habeas Corpus Relief, pages 1-4. Petitioner now responds to Respondent's Answer to his Petition, and respectfully requests that said Petition be **GRANTED** for the reasons stated in the submitted Petition For Writ of Habeas Corpus, and in the argument stated infra.

Additionally, Petitioner asserts that any and all defenses presented by respondent are inapplicable. To the extent that the claims presented on Petition For Writ of Habeas Corpus are meritorious, Petitioner asserts that said Constitutional claims cannot be said to be Harmless beyond a Reasonable Doubt. Petitioner also submits that the Constitutional claims asserted also had a substantial impact or influence on the Petitioner's Trial.

INCONSISTENT PAGE NUMBERS
(no Page #1)

Petitioner has cited record support, and Respondent does not show where Petitioner does not, that the facts in said Petition are true and correct. Petitioner has not requested by motion discovery, bond, or oral arguments, but to the extent that this Honorable Court deems necessary, Petitioner urges the Court to **GRANT** the aforementioned, including any evidentiary hearing needed, and also any and all relief this Honorable Court may see necessary.

## PETITIONER'S REBUTTAL

### I

### PETITIONER HAS SHOWN THAT THE STATE COURT'S DECISION REGARDING PETITIONER'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM IS AN UNREASONABLE DETERMINATION OF THE FACTS IN LIGHT OF THE EVIDENCE PRESENTED AT TRIAL.

Petitioner submits that his conviction is based on a sole eyewitness who never testified to Petitioner's involvement in an actual crime, but testified that Petitioner was merely "present" when the crime occurred. The Trial Court Record of the case clearly shows that Petitioner wasn't bound over for Trial on Armed Robbery Charges while then Co-Defendant Doyle Mims was. (PET 26-27). This fact of the record becomes important in determining whether the District Court Judge believed evidence supported a theory that Petitioner was involved in the Robbery of the victim itself, but left it up for a jury to decide whether or not he participated in the murder.

The Trial Court Record further shows that the Victim's dying declaration when asked if "Doyle and them" shot him was in the affirmative. (TT. Vol. II, p.86, 95) The Defense's Theory that Petitioner was "merely present" for the shooting of the victim, but that Petitioner wasn't the only person present for the shooting. Former Co-Defendant Doyle Mims was present as well, and although he didn't go as far as to implicate himself in the murder, he didn't implicate Petitioner either. The very fact that the only witness to the crime who testified, Mr. Collins (Doyle Mims' Grandfather), implicated Mr. Mims in every aspect of the crime but the murder. The murder, Mr. Collin's claims to have witnessed, was committed by Petitioner, while in the same Trial Court testimony Mr. Collins admits to having to ask the victim if "Doyle and them" shot him.

Petitioner submits that the aforementioned Trial Court Record shows that Trial Counsel knew or should have known there was a conflict at Trial as far back as Preliminary Examination as to who actually shot the victim. Trial Counsel further knew that the sole prosecution witness,

Mr. Collins would not go as far as to implicate his own Grandson in the murder, and that the only witness who could counter Mr. Collins testimony at Trial would be former Co-defendant Doyle Mims. Trial Counsel had a duty to respond to Mr. Collins' testimony with the only testimony that could have rebutted it. As a result, Petitioner, asserts that he has been deprived of his right to effective assistance of counsel because Trial Counsel failed to investigate or even contact Mr. Mims, who had expressed his willingness to testify on Petitioner's behalf up to a month before trial.

**Trial counsel was Ineffective for failing to call the One Witness who could have Rebutted the State's Leading Witness**

Petitioner submits that the Trial Record supports Trial Counsel's performance was Constitutionally Deficient, and fell below the "objective standard of reasonableness". Further, that had Trial Counsel presented Mr. Mims, or even his statements, it is "reasonably probable that the result of the proceeding would have been different had it not been for counsel's error". *Strickland v. Washington,* 466 U.S. 668; 104 S.Ct. 2052; 80 L.Ed.2d 674 (1984).

Respondent argues that it was sound Trial Strategy for Trial Counsel not to present the only witness in the case that was not only willing to testify on Petitioner's behalf, but was also the only person alive who could directly refute the prosecution's lead witness. This because he was either "unaware" of the recantation, or because he "strategically" chose not to present him.

To say that Trial Counsel was "unaware" of the recantation is to cede to Trial Counsel's objective unreasonableness, as Mr. Mims had taken his plea deal prior to Petitioner going to Trial. The moment Trial Counsel was informed that Mr. Mims had taken a plea and was no longer Petitioner's Co-Defendant, Trial Counsel should have been investigating whether Mr. Mims was a potential witness for the prosecution against his client. As soon as Trial Counsel found out that

Mr. Mims would not be testifying for the Prosecution his investigation should have focused on the reason why, and whether or not Mr. Mims could be used to aggressively assert the "Mere Presence" defense Trial Counsel claimed as his strategy.

In the case of *John Palazzolo v Sherry Burt*, F.Supp. 2d (E.D. Mich #08-`14287, 4/21/11) Judge Tarnow (6th Circuit Eastern District Judge) granted Petition for Writ of Habeas Corpus, finding trial counsel ineffective for failing to adequately investigate and produce two (2) witnesses at trial who would have provided a substantial defense.

The Court has repeatedly held that "A lawyer who fails to adequately investigate and produce evidence that demonstrates his client's factual innocence or that raises sufficient doubt as to that question to undermine confidence in the verdict, renders deficient performance." The obligation to investigate only grows more imperative where the evidence at issue is the "Only Evidence" that could support the defense theory. *Duncan v Ayers*, 129 S. Ct. 1614, 173 L. Ed 2d 1001 (2009)

It is well established federal law that where Counsel fails to interview and investigate promising witnesses there is no reason to support that they believe they would not be valuable in securing defendants release, "counsel's inaction constitutes negligence, not trial strategy." (*Workman v Tate*, 957 F.2d 1339, 1345 (6th Cir 1992) (citation omitted); See *Nealy v Cabana*, 764 F2d 1173, 1177 (5th Cir 1985) finding that "counsel has the duty to interview potential witnesses and make independent investigation of the facts and circumstances of the case."

Respondent argues that Mr. Mims' testimony or statement could have done more harm than good. We cannot know the answer to this question, because Trial Counsel never investigated the one and only witness who could support his argument of "Mere Presence". Further, Respondent's argument ignores the fact that in order for Trial Strategy to be considered "sound",

the United States Supreme Court has ruled that a reasonable investigation must take place. There is no sound trial strategy where Trial Counsel refuses to investigate a witness. "Strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland v. Washington, 466 U.S. 668; 104 S.Ct. 2052; 80 L.Ed.2d 674 (1984).

As stated in his Petition for Writ of Habeas Corpus, Petitioner was denied his right to the *effective* assistance of counsel. To be considered **effective**, Counsel has a duty to investigate, prepare, and assert all substantial defenses. *Kimmelman v. Morrison,* 477 U.S. 365; 106 S.Ct. 2574 (1986). In order to assert an effective defense, Counsel is also duty bound to make reasonable investigations, or reasonable decisions that make a particular investigation unnecessary. Wiggins v. Smith, 539 U.S. 510, 521; 123 S.Ct. 2547 (2003). Trial Counsel cannot claim sound trial strategy where there is no investigation to support a decision not to present a particular witness. McClellan v. Rapelje, 703 F.3d 344 (6th Cir. 2013).

Petitioner asserts that Trial Counsel's performance was objectively unreasonable in the following ways;

1.) The October 24, 2014 Affidavit was written and submitted a month before trial. This presented Trial Counsel at least a 30 day window of opportunity to act on the referral of Mr. Mims by Petitioner and discuss with either Mr. Mims, or his Attorney about the possibility of testifying at trial.

2.) No other evidence of Petitioner's involvement in the crime was presented at Trial. Further, no other defense was presented by Trial Counsel. However, the October 24, 2014 Affidavit directly refuted the testimony Trial Counsel knew, and understood, would be the central issue at Trial, presented by the one person who could directly

implicate Petitioner through association with his Grandson.

3.) Even if Mr. Mims could not be compelled to testify, Trial Counsel had a duty to seek admission of the October 24, 2014 Affidavit itself into evidence as Rebuttal to Mr. Collins' claim to have both witnessed the crime and that his Grandson, Mr. Mims wasn't the shooter.

In Avery, the Michigan Court of Appeals concluded that Lankford "adequately investigated Avery's potential alibi witness and that he made a valid strategic decision not to present such a defense because the information he obtained did not provide defendant with an alibi for the time of the crime." *People v Avery*, 2002 WL 31264726 at *1

Likewise, in *Ramonez v Berghuis*, 490 F.3d 482 (6th Cir. 2007), *Ramonez* asserted that his "attorney's (Moore) decision to limit (or more accurately, not to pursue at all until it was too late) any investigation regarding the three (3) potential witnesses was objectively unreasonable, leading to an uninformed, and therefore unreasonable decision not to call those witnesses at trial." Ramonez states:

> "Constitutionally effective counsel must develop trial strategy in the true sense-not what bears a false label of "strategy" based on what counsel guesses they might say in the absence of a full investigation. Moore's performance fell well on the wrong side of that line."

As in *Clark v Redman*, 1988 US App 17616, Defendant's grandmother, aunt and (according to their affidavits), all other known and possibly discoverable potential alibi witnesses would have directly impeached the credibility of the prosecution's witnesses against the Defendant. "No reasonable competent trial attorney would have failed to, at least, interview them."

The United States Court of Appeals for the 6th Circuit found that even though petitioner

informed counsel on the eve of trial, though "it may have placed counsel in an awkward position," as the District Court found, it did not relieve [counsel] of his duty to investigate the witnesses as part of his responsibility to provide petitioner with "reasonably effective assistance." In the case at bar, Petitioner's Trial Counsel knew about Mr. Mims as a potential witnesses a month prior to trial; surely the 6th circuit's findings are applicable to Petitioner's Trial Counsel. Thus, as stated in *Clark v Redman supra*:

> "Because petitioner's testimony that he told his trial counsel about the witness is uncontradicted, because he unquestionably mentioned them . . . and because no conceivable reason exist for him to have withheld this information from his counsel, we hold that petitioner has produced sufficient evidence that his trial counsel knew about the witnesses, and failed to investigate them. We hold the district court clearly erred in concluding otherwise. Counsel's representation was therefore constitutionally infirm."

U.S. v Murillo, 2011 LEXIS 122541, cited Redman in reference to the Sixth Circuit application of Strickland. Likewise, in Murillo, as in Petitioner's case, "counsel's decision not to interview and call the known potential alibi witnesses at trial was not reasonable; it was not based on a reasonable investigation; he was not in a position to make an informed decision whether the testimony of these witnesses would be beneficial to Petitioner's case."

Also, the Sixth Circuit stated that "it is objectively unreasonable for defense counsel to decide not to call a witness without first investigating the witness." *Towns v Smith*, 395 F3d at 260. The decision not to call cannot be based on "what counsel guessed the witness might say in the absence of a full investigation and not on what investigation reveals witnesses will actually testify to." *English v Romamowski*, 602 vF.3d 714, 728 (6th Cir. 2010) (quoting *Ramonez v Berghuis*, 490 F.3d 482, 489 (6th Cir. 2007); See also *Poindexter v Booker*, 301 Fed. Appx. 522, 528-29 (6th Cir. 2008) where alibi witness approached trial counsel, and trial counsel was not receptive or interested in their testimony, and did not investigate the alibi witnesses further, trial counsel's

investigation was objectively unreasonable); *Avery v Prelesnik*, 548 F.3d 434, 437-38 (6th Cir. 2008)(where trial counsel's only attempt to contact alibi witness was through an investigator who left it up to the witness to contact counsel, and trial counsel never personally attempted to contact the witness personally, trial counsel's investigation was objectively unreasonable, because at a "bare minimum" counsel should put forth a reasonable effort to contact witnesses). The Sixth Circuit noted that "American Bar Association standards, which provide guidance as to what constitutes 'reasonable' professional conduct, . . . also mandates counsel's duty to investigate all leads relevant to the merits of the case." Id. at 1183 (citing ABA Standards for Criminal Justice 4-4.1, 4.54-4.55 (1980). It is objectively unreasonable for counsel to abandon an investigation at a time that makes making a fully informed decision impossible. Wiggins, 539 U.S., at 527-28.

Petitioner submits that the Prejudice prong in the case at bar is apparent. At Trial you have a single eye witness who turns his own Grandson in to Police. He describes the crime from start to finish with his Grandson, Mr. Mims as the principle initiator of the crime, from the filling of items into the Verizon box to sitting in the front seat with the Victim. Mr. Mims not only got arrested with the bloody money from the crime scene, but his own Grandfather, sole eye witness Mr. Collins, called the FBI and reported, "My Grandson just shot somebody". (TT. Vol .II, 99) At Trial Mr. Collins identified Mr. Mims as his Grandson. So how do we get Petitioner, Mr. Darius Lewis convicted of First Degree Murder?

Mr. Collins may have told the FBI that "My Grandson just shot somebody", but it's not what he testified to at trial. Knowing he would never see his Grandson again if he were convicted of First Degree Murder, it was Petitioner and not Mr. Mims, who Mr. Collins would identify as the actual killer. This, even though Mr. Mims himself signed two different Affidavits, and even tried to contact Petitioner's Attorney to refute his Grandfather's story and take responsibility for

the crime. The failure of Petitioner's Trial Counsel to at least raise an eyebrow at the testimony of Mr. Mims, for the possibility of defending his client was prejudicial in two critical ways;

1.) Trial Counsel's failure to present Mr. Mims as a witness allowed the Prosecution's lead witness to establish Petitioner as the killer of the victim ***Unrebutted***, where if Mr. Mim's would have been presented, or at least his Affidavit in Rebuttal of Mr. Collins testimony, would have certainly given sufficient reasonable doubt that Petitioner was guilty of Murder.

2.) Trial Counsel's failure to present Mr. Mims as a witness allowed the Prosecutor to resurrect the same Felony Murder Charge that had been dismissed at the State District Court level for insufficient evidence of armed robbery. No connection had been made between the taking of property and Petitioner. At no point was there any testimony about an agreement between Petitioner and Mr. Mims to rob the victim. Making Petitioner the Killer ***infers*** he was involved in a robbery attempt. The Failure of Trial Counsel to present Mr. Mims, who signed an Affidavit saying Petitioner "wasn't involved", allowed the Prosecution to connect the Murder to the robbery of the victim, which resulted in the Felony Murder conviction and a Life Sentence.

In order to establish prejudice under the second *Strickland* prong, a defendant is not required to prove that his trial attorney's conduct more likely than not altered the outcome of the case. *Strickland*, 466 US at 693; *Nix v Whiteside*, 477 US 478; 106 SCt 2639; 91 LEd2d 397 (1986); *Workman v Tate*, 957 F2d 1339, 1346 (CA 6, 1992). Rather, the defendant need only show a "reasonable probability" that absent the errors, the outcome may have been different. *Strickland*, 466 US at 694; Petitioner asserts that he has met said standard here. Because trial counsel deprived Petitioner of his Sixth Amendment right to the effective assistance of counsel, Petitioner requests

this Honorable Courts to Grant his Petition for Writ of Habeas Corpus.

II

**PETITIONER'S CLAIM THAT HE WAS DENIED THE RIGHT TO AN IMPARTIAL JURY BECAUSE THE TRIAL COURT ENDED VOIR DIRE AND SWORE IN THE JURY WITHOUT PETITIONER EXERCISING ALL OF HIS PEREMPTORY CHALLENGES IS COGNIZABLE ON FEDERAL REVIEW, AND CAN NOT BE SAID TO BE HARMLESS BEYOND A REASONABLE DOUBT**

Petitioner submits that he was denied his 6th Amendment Right of the U.S. Constitution to be tried by a fair and impartial jury, guaranteed to him through the Due Process Clause of the 14th Amendment to the U.S. Constitution. Although the discretion of whether to grant or withhold peremptory challenges is a matter of state law, Petitioner is guaranteed a Fair Trial by the U.S. Constitution. If Petitioner's trial is unfair from it's most fundamental function, the jury selection process, not because State Law made it unfair, but because the Trial Court failed to follow the law, Petitioner is entitled to the Process that is Due, particularly a Fair Trial.

Respondent refers to the Michigan Court of Appeals decision as it relates to the peremptory challenge issue, that it was considered and rejected in a manner that was not objectively unreasonable. Petitioner draws this Court's attention to the Michigan Court of Appeals citing of *People v. Bell*, 473 Mich. 275; 702 N.W.2d 128; 2005 Mich. LEXIS 1143, and submits that Bell is not analogous to Petitioner's case. In Bell the trial Court did not deny the Defendant the right to exercise the statutorily prescribed peremptory challenges, rather stepped in when the Court perceived Defense Counsel as using the peremptory challenges weed out white jurors. No such claim of misuse is made in Petitioner's case. The Bell Court also pointed out that although the Trial Court initially erred in denying

Defense Counsel the opportunity to provide race neutral reasons for his challenges, the errors were cured when the Trial Court allowed Defense Counsel to make a record. Again, no such cure was provided to Petitioner.

Petitioner further points out, the Michigan Court of Appeals did find error in the Trial Court's termination of Petitioner's jury selection process; "We agree that the trial court erred in terminative jury selection as it did". Petitioner does not claim the Michigan Court of Appeals was unreasonable in it's finding of error, but rather the Michigan Court of Appeal's adjudication 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding'. The fact is, the Trial Court's insistence on empaneling the jury, over objection, after the statute had been pointed out, and even after the Trial Court itself realized in fact, Petitioner was within his rights to exercise not one, but up to 10 more peremptory challenges, violated Due Process and denied Petitioner a fair Trial.

The Michigan Court of Appeals is correct that the Trial Court "prematurely" terminated Petitioner's jury selection. Further, the issue had been properly preserved for appellate review, and also, that the right to peremptory challenge is statutorily based. However, the complete denial of a state-created liberty interest violates Due Process and denied Petitioner a right to a fair trial.

In *Rivera v. Illinois*, 556 U.S. 148; 129 S.Ct. 1446; 173 L.Ed.2d 320; 2009 U.S. LEXIS 2495 (2009), cited by Respondent, the Court held that a state court's "one-time, good-faith" error in disallowing a peremptory challenge did not "without more" require reversal. Id. At ;129 S.Ct. 1454-1455. The Court contrasted a judge's good-faith mistake with one arising because the judge deliberately misapplied the law or because the judge had acted in an arbitrary or irrational manner.

In the case at bar, it should be concluded neither that the trial court's error was made in good faith nor that a good-faith error occurred "without more". Rather the trial Court deliberately

refused to afford Petitioner the Due Process required under a state-created liberty interest protected by the U.S. Constitution. And, unlike the Trial Court in Rivera, which merely erred in good faith by finding a Batson error, the Trial Court in the instant case, despite never finding such an error in the first place, nonetheless arbitrarily proceeded as if it had. Furthermore, the court purposefully refused to follow a protected process that incorporated clearly established federal and state constitutional principles, and that rejection occurred in furtherance of the trial court's stated determination to empanel a "fair" and impartial jury.

Petitioner respectfully requests this Honorable Court to consider the impact of seating a jury that includes individuals who were High School classmates of the Judge, knowing you should have been afforded the opportunity to completely reconfigure the jury. In a case that came down to a sole eyewitness who accused his own Grandson of carrying out a murderous armed robbery in every single detail, except for the murder itself. Even though that sole eyewitness had reported to the FBI, "My Grandson just shot somebody", he testified at trial that Petitioner, not his Grandson, was the shooter.

Petitioner had a Due Process right to a fair trial, a right that was denied when the trial Court refused to follow the law. For this reason, and the reasons stated in Petitioner's Petition For Writ of Habeas Corpus, Petitioner request that his Writ be Granted.

## III

## THE TRIAL COURT'S ADMISSION OF GRUESOME PHOTOS OVER DEFENSE COUNSEL'S OBJECTION DENIED PETITIONER A FAIR TRIAL.

Petitioner asserts that he was denied the Due Process right to a fair trial where the Trial Court admitted gruesome photographs of the victim's body, over Defense Counsel's objection. Petitioner asserts that the admission of the photographs served only the purpose of inflaming the jury, and facts show that even the Trial Court cringed at the sight while at the same time overruling the objection. Petitioner asserts that it was unnecessary to show the photos in the case at bar because Defense Counsel argued he would stipulate to the identification of the victim's body and the medical examiner's testimony regarding the victim's cause of death was not a point of contention. Therefore the admission of the horrific photographs into evidence by the Trial Court prejudiced Petitioner, denying him a fundamentally fair trial. *Garrett v. Parke*, 892 F.2d 79, 1989 WL 153553, *1 (6th Cir.)

Petitioner submits that the admission of the gruesome photos into evidence unfairly prejudiced the jury against him. The photographs were gruesome and shocking and the Trial Court abused it's discretion by admitting them into evidence. The Trial Court understood that there was a danger that admission of the photos would lead the jury to decide the case on an improper, emotional basis, and that it would be in equitable to allow the use of such evidence.

Furthermore, Petitioner submits that no instruction was given to the Jury to help limit the prejudicial impact of the photos. Petitioner asks this Court to find that the prejudicial impact of the gruesome photos substantially outweighed it's probative value, thus denying Petitioner a fair trial.

## CONCLUSION

Petitioner asserts that he was convicted of a crime he did not commit. The central purpose of any system of criminal justice is to convict the guilty and free the innocent. *United States v. Nobles,* 422 U.S. 225, 230; 95 S.Ct. 2160; 45 L.Ed.2d 141 (1975). "To satisfy the 'actual innocence' standard, a defendant 'must show that it is more likely than not that no reasonable juror would have found [the Petitioner] guilty.'" The test balances the evidence of innocence against the reliability of the state's verdict to determine "whether it is more likely than not that no reasonable juror viewing the record as a whole would lack reasonable doubt. *Schlup v. Delo*, 513 U.S. 298; 115 S.Ct. 851; 130 L.Ed.2d 808 (1995). This standard does not require absolute certainty about the Petitioner's guilt or innocence. *House v. Bell*, 547 U.S. 518; 126 S.Ct. 2064; 165 L.Ed.2d 1 (2006).

It is more likely than not that no reasonable juror would have found Petitioner, Darius Lewis, guilty had Doyle Mims or his affidavit been presented at trial. An injustice has been done to Mr. Lewis, and he asks this Honorable Court to Grant his Petition For Writ of Habeas Corpus.

Respectfully Submitted,

Darius Lewis #781780
Petitioner *in pro per*
Bellamy Creek Corr. Facility
1727 W. Bluewater Hwy.
Ionia, MI 48846

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**DARIUS LEWIS,**
Petitioner,

v

**WILLIE O. SMITH, WARDEN,**
Respondent,

CASE NO. 2:17-cv-14174
**HON. ROBERT H. CLELAND**
**MAG. R. STEVEN WHALEN**

---

**PROOF OF SERVICE**

I, Eric Flowers, Petitioner, state that on July___, 2018 I mailed, via first class mail, with postage prepaid, one copy of the following documents checked below:

| | |
|---|---|
| **X** | Petitioner's Reply to Respondent's Answer to Petition |
| | |
| | |
| | |
| | |

TO: Michigan Department of Attorney General
Attorney for Respondent
Habeas Corpus Division
P.O. Box 30212
Lansing, Michigan 48909

I declare that the above statements are true to the best of my knowledge, information and belief.

Respectfully,

Darius Lewis #781780
Petitioner in *pro per*

Darius Lewis #781780
Bellamy Creek Correctional Facility
1727 West Bluewater Hwy.
Ionia, MI 48226

2.26

8/2/18 BP

Office of The Clerk
United States District Court For
The Eastern District of Michigan
Theodore Levin U.S. Courthouse
231 W. Lafayette Blvd.
Detroit, Mi 48226

RECEIVED
AUG - 6 2018
CLERK'S OFFICE
U.S. DISTRICT COURT