# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DARIUS LEWIS,

        Petitioner,

                                     Case No. 17-14174

    v.

WILLIS CHAPMAN, WARDEN,[1]

        Respondent

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY

Petitioner Darius Lewis, an inmate at the Thumb Correctional Facility in Lapeer, Michigan, filed a *pro se* petition for habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his felony murder conviction, Mich. Comp. Law § 750.316, for which he is serving a term of life without parole. The petition raises claims of actual innocence, ineffective assistance of counsel, improper denial of jury selection peremptory challenges, and the prejudicial admission of photographs of the deceased victim. For the reasons provided below, the court will deny the petition. The court will also deny a certificate of appealability.

## I. BACKGROUND

A Wayne County Circuit Court jury convicted Petitioner of felony murder, Mich. Comp. Law § 750.316, for the August 19, 2014 shooting death of Sa–Jad Al–Jabur.

---

[1] The court amends the caption to the name of Petitioner Lewis' current warden, reflecting his current incarceration at the Thumb Correctional Facility, Lapeer, Michigan. *See* Rule 2(a) of the Rules Governing § 2254 Cases, 28 U.S.C. § 2254.

*People v. Lewis*, No. 326141, 2016 WL 3429683, at *1 (Mich. Ct. App. June 21, 2016).

Petitioner's co-defendant, Doyle Mims, pleaded guilty to second-degree murder; in

exchange, additional counts of armed robbery and possession of a firearm during the

commission of a felony (felony-firearm) were dropped. *Id*. After a robbery charge was

dismissed, Petitioner was tried alone on charges of open murder, Mich. Comp. Laws §

750.316, and felony-firearm, Mich. Comp. Laws § 750.227b. *Id*. The state court of

appeals reported the trial testimony as follows:

> The evidence showed that [co-defendant Doyle] Mims had sold cell phones
> to the victim in the past. On the day of the offense, the victim arrived at the
> house where Mims was then living. Mims and defendant were sitting outside
> on the porch, apparently awaiting his arrival. Mims had a sealed box with a
> Verizon label on it. The box contained miscellaneous household items, but
> not cell phones. Mims's grandfather, Roger Collins, Jr., testified that
> defendant had a bulge in the front of his pants, which led Collins to believe
> he might be carrying a gun. When the victim arrived, defendant and Mims
> both went to meet him. Mims took the box and entered the front seat of the
> victim's car while defendant sat in the back. Suddenly, defendant pulled out
> a gun and shot the victim in the back of the head. Defendant and Mims fled
> the scene. Mims was later found in possession of a large amount of cash;
> the bills were blood-stained. It was defendant's theory at trial that Mims shot
> the victim and defendant was "merely present." The jury was instructed on
> premeditated murder, felony murder (predicated on robbery or larceny), and
> second-degree murder on the open murder charge and on felony-firearm. It
> was also instructed on aiding and abetting. The jury found defendant guilty
> of felony murder and not guilty of felony-firearm.

*Id*. at *1.

On February 13, 2015, Petitioner was sentenced to life without parole. (ECF No.

10-13, PageID.693.) Following Petitioner's direct appeal by right, the Michigan Court of

Appeals affirmed his conviction, and the Michigan Supreme Court denied leave to

appeal. *Id*. at *7; *People v. Lewis*, 895 N.W.2d 520 (Mich. 2017).

On direct appeal, Petitioner raised three issues through court-appointed counsel and one additional issue in a *pro se* brief.[2] *Lewis*, 2016 WL 3429683 at *1–*7. Petitioner's appellate counsel argued that: (1) Petitioner was actually innocent and his trial attorney ineffective for failing to present at trial an exculpatory witness or the witness's statements against interest; (2) Petitioner was denied a fair trial by the trial court's declaration of a jury before the defense could exercise all its peremptory challenges; and (3) Petitioner was denied a fair trial because of the admission of gory photographs of the victim. (ECF No. 10-14, PageID.715.) In his pro se Standard 4 brief, Petitioner raised the sole argument of the insufficiency of the evidence. (*Id.* at PageID.819.) The Court of Appeals affirmed his conviction and sentence.

Petitioner's appellate attorney then filed leave to appeal to the Michigan Supreme Court, raising the same three issues she raised in the Court of Appeals. (ECF No. 10-15, PageID.906.) The Michigan Supreme Court affirmed the lower court in a standard form order. *People v. Lewis*, 895 N.W.2d 520 (Mich. 2017).

Petitioner filed the instant petition for the writ of habeas corpus on December 19, 2017. In it, he raises the same three claims as his attorney raised in the state appellate courts: (1) his actual innocence and ineffective assistance of counsel, (2) his inability to use of all of his peremptory challenges, and (3) the admission of gory photographs of the victim. The Respondent does not argue that Petitioner failed to exhaust any of these

---

[2]  Michigan criminal defendants may file a brief in propria persona for claims they seek to raise on appeal, if appointed counsel does not include those claims in their pleadings. *See* Standard 4, Michigan Supreme Court Administrative Order No. 2004-6 (2004) (establishing minimum standards for criminal defense appellate services). Defendants are also entitled to "procedural advice and clerical assistance" from appellate counsel to ensure their pro se pleadings will be accepted by the court. *Id.*

claims. (ECF No. 9, PageID.86.) Petitioner also filed a writ of certiorari to the Supreme

Court, but it was denied on January 22, 2018. *Lewis,* 2016 WL 342968, *cert. denied*,

138 S. Ct. 933 (Jan. 22, 2018) (No. 17-6975).

Respondent filed his response and Rule 5 materials on July 3, 2018. Petitioner

filed a Reply on August 6, 2018. Thereafter, Petitioner filed a motion for leave to amend

his petition and a motion to stay the proceedings. (ECF Nos. 12, 14.) In his motion for

leave to amend, Petitioner brought to the court's attention "recently discovered"

information related to instances of misconduct by his trial judge in other cases for which

the judge was disciplined. (ECF No. 12, PageID.979.) Petitioner asks the court to

consider the judge's behavior in those cases in assessing his claim regarding the trial

court's denial of his use of peremptory jury challenges. (*Id.* at PageID.980.) The court

denied Petitioner's request for stay, construed Petitioner's motion to amend as a motion

to supplement, and received the information related to Petitioner's trial court judge.

(ECF No. 16, PageID.995.)

## II.   STANDARD

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, imposes the

following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim —
>
>> (1) resulted in a decision that was contrary to, or involved an
>> unreasonable application of, clearly established Federal law, as
>> determined by the Supreme Court of the United States; or

4

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000) (O'Connor, J., concurring). An "unreasonable application" of law occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings . . . and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citation omitted). A state court's determination that a claim lacks merit "precludes federal habeas relief so long as - 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. Pursuant to section 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court.

*Id.* Although § 2254(d), as amended by the AEDPA, does not completely bar federal courts from re-litigating claims which state courts previously rejected, a federal court may grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence. *Id.* Moreover, for claims that were adjudicated on the merits in state court, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III.    DISCUSSION

#### A.  Actual Innocence and Ineffective Assistance of Counsel

Petitioner claims that he is actually innocent and that his defense attorney was constitutionally ineffective for failing to obtain the testimony of Petitioner's co-defendant, Doyle Mims, or to introduce Mims's affidavits asserting Petitioner's lack of involvement. Petitioner argues that while Mims's grandfather, Roger Collins, Jr., suggested that Petitioner was the shooter at trial, Collins previously told the police that Mims shot the victim. Mims did not testify at Petitioner's trial, but signed an affidavit before trial stating that Petitioner was not guilty, that someone else "taller and skinny" was the shooter, that Mims was pressured by police into making the statement implicating Petitioner, and that his grandfather, Collins, was under the influence of heroin the night of the shooting.

(ECF No. 10-14, PageID.747.) Mims signed an additional affidavit after Petitioner's trial asserting that Petitioner was innocent and not involved in the offense "in any way." (*Id.* at PageID.748.) In his second affidavit, Mims also asserted that he wanted to testify on Petitioner's behalf. (*Id.*) Petitioner, in his reply brief, emphasizes that his conviction is based on the testimony of a single witness, Collins, who Petitioner claims never definitively identified him as the shooter. (ECF No. 10-11, PageID.496.) Petitioner explains that Collins testified to asking the victim whether "Doyle [Mims] and them" were responsible. (*Id.*; ECF No. 10-11, PageID.496 (trial transcript).) Petitioner asserts that the testimony of Collins bolsters his defense that he was merely present at the shooting. (ECF No. 11, PageID.496; ECF No. 10-11, PageID.496, 513 (trial transcript).)

The Michigan Court of Appeals found Mims's statements regarding Petitioner's innocence to be inconsistent: Mims implicated Petitioner first to the police in his statement and again when he pleaded guilty to second-degree murder. 2016 WL 3429683, at *2. Additionally, the Court of Appeals determined that defense counsel may not have been aware of Mims's exonerating affidavits. *Id.* In either event, the court found that counsel was not ineffective for failing to call Mims or introduce his exonerating affidavits. *Id.* at *3–*4.

The Supreme Court of the United States "ha[s] not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence." *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) (citing *Herrera v. Collins*, 506 U.S. 390, 404–405 (1993)). It has only permitted the use of such a claim to counter potential rejection of a habeas petition for procedural default or status as a second, successive petition. *Id.* (citing *Herrera*, 506 U.S. at 404).

The Sixth Circuit recently analyzed such a freestanding claim in *Stojetz v. Ishee*, 892 F.3d 175 (6th Cir. 2018), *cert. denied*, *Stojetz v. Snoop*, 139 S. Ct. 1262 (2019). That is, "rather than asserting a claim of innocence to overcome a procedural bar to the consideration of a constitutional claim, . . .  Stojetz argues that he is entitled to habeas relief, full-stop, because he is innocent." *Id.* at 207–08 (citing *Schlup v. Delo*, 513 U.S. 298, 326–27 (1995); *House v. Bell*, 547 U.S. 518, 554 (2006)). The court explained, however, that "the threshold showing for such an assumed right would necessarily be extraordinarily high." *Id.* at 208 (citing *Herrera*, 506 U.S. at 417). The Sixth Circuit declined to specifically resolve the issue of the threshold for asserting a freestanding innocence claim but did suggest that "the showing required for such a hypothetical claim would be greater than that required for a gateway-innocence claim." *Id.*; *House*, 547 U.S. at 555. The court reasoned that if a petitioner "cannot meet the standard for a gateway-innocence claim—viz., establishing that 'it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt[,]'" *Stojetz*, 892 F.3d at 208 (quoting *Schlup*, 513 U.S. at 327), then, logically, he cannot meet *Herrera*'s "extraordinarily high" threshold. *Id.*

Such is the circumstance in this case. Apart from his self-profession of innocence, the only purportedly exculpatory bits of evidence cited by Petitioner are the assertions of his codefendant—inconsistently made though they are—that Petitioner is innocent and "was not involved in any way" in the shooting of Al-Jabur. (ECF No. 10-14, PageID.747–48.) However, "postconviction statements by codefendants are inherently suspect because codefendants may try to assume full responsibility for the crime without any adverse consequences." *Allen v. Yukins*, 366 F.3d 396, 405 (6th Cir. 2004).

8

Even more to the point, here, like the evidence at issue in *Allen*, Mims's affidavits "exculpate[]" Petitioner, "but do[] not actually inculpate" Mims himself. *Id.* (emphasis omitted). Mims never takes responsibility for the shooting in either affidavit. As a result, the "affidavit [is] inherently suspect because [he] could have signed the affidavit in order to help his codefendant . . . without endangering his own interests." *Id.* at 406; *see also Davis v. Bradshaw*, 900 F.3d 315, 333 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 1619 (2019). Finally, Mims's assertions cannot establish Petitioner's innocence because they are inconsistent with trial testimony. *Allen*, 366 F.3d at 406.[3]

In addition to his innocence claim, Petitioner argues that his defense attorney was ineffective for failing to place Mims on the witness stand or to have Mims's "statement against interest" entered into the trial record. Claims for habeas relief based on ineffective assistance of counsel are evaluated under a "doubly deferential" standard. *Abby v. Howe*, 742 F.3d 221, 226 (6th Cir. 2014) (citing *Burt v. Titlow*, 571 U.S. 12, 15 (2013)). The first layer is the familiar deficient performance plus prejudice standard of *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). That is, a habeas petitioner must first show "that counsel's representation fell below an objective standard of reasonableness," and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lafler v.*

---

[3] In his reply brief, Petitioner argues that the victim's affirmative response to the question by Collins of whether he was shot by "Doyle and them" is exonerating. (ECF No. 11.) This argument is at odds with Collins's actual testimony. Collins testified that he saw Petitioner – whose name he did not know at the time – shoot the victim and that he asked the victim about "Doyle and them" because he did not know Petitioner's name. (ECF No. 10-11, PageID.488–89, 496, 513.) Regardless, Petitioner was charged under an aiding and abetting theory, so Petitioner's insistence (with or without evidentiary support) that Mims was the shooter does not demonstrate his innocence.

*Cooper*, 566 U.S. 156, 163 (2012) (citations omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Williams v. Lafler*, 494 F. App'x 526, 532 (6th Cir. 2012) (per curiam) (quoting *Strickland*, 466 U.S. at 694)). *Strickland* requires a "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance[,]" *Abby*, 742 F.3d at 226 (citing *Strickland*, 466 U.S. at 689), and that "under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Bell*, 535 U.S. at 698 (citing *Strickland*, 466 U.S. at 689).

The AEDPA provides a second layer of deference, under which the court may "examine only whether the state court was reasonable in its determination that counsel's performance was adequate." *Abby*, 742 F.3d at 226 (citing *Burt*, 134 S. Ct. at 18). Success on an ineffective assistance of counsel claim is relatively rare because the *Strickland* standard is "'difficult to meet.'" *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Metrish v. Lancaster*, 569 U.S. 351, 357–58 (2013)). The "doubly deferential" standard under AEDPA is even more difficult to meet because it requires the court to give "both the state court and the defense attorney the benefit of the doubt." *Burt*, 571 U.S. at 15. As a result, "the question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

The court concludes that the rejection of Petitioner's ineffective assistance of counsel claim by the Michigan Court of Appeals was reasonable under this standard. Petitioner argues that his counsel should have produced Mims to testify and that if Mims invoked his Fifth Amendment privilege, and was thus unavailable, counsel should have

introduced his statement as one against interest. (ECF No. 1, PageID.31–32.) This argument lacks merit for several reasons.

First, as discussed above, Mims's statements and actions vacillated between implicating Petitioner—to police and at his plea hearing—and exonerating him via the two affidavits. Accordingly, on the stand, the prosecution could have easily impeached Mims over those inconsistencies. With that record, it is unlikely that a jury would have afforded any credibility to his testimony.

Second, Mims's affidavits do not qualify as "statements against interest." Under Michigan law, to admit a statement offered to exculpate a defendant, the following criteria must be established:

> (1) the declarant is unavailable to testify, (2) the statement is against the declarant's penal interest, (3) a reasonable person in the declarant's position would have believed the statement to be true, and (4) corroborating circumstances clearly indicate the statement is trustworthy.

*Lewis*, 2016 WL 3429683, at *4 (citing *People v. Barrera*, 547 N.W.2d 280, 286 (Mich. 1996)). Mims's affidavits fail to meet this test in at least two regards. First, Mims does not implicate himself in any way; he asserts no more than Petitioner's supposed innocence and lack of involvement, and that does not qualify as a statement against his interest. And second, Petitioner has not argued anything, nor is support found in the record, to corroborate Mims's assertions. To the contrary, as explained above, an eyewitness to the shooting, Collins, specifically identified Petitioner as the shooter.

Nor can Petitioner meet *Strickland*'s second prong; he cannot demonstrate any prejudice from the omission of Mims's testimony. In the presence of competing eyewitness testimony, Mims's inherently shaky testimony was untrustworthy and

unlikely to have swayed the jury. *See Rogers v. Doom*, 477 F. App'x 343, 345 (6th Cir. 2012) ("Rogers did not show . . . how any witness's testimony would have changed the outcome of the trial.").

This court must determine whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard," *Richter*, 562 U.S. at 105. As explained above, defense counsel's decision not to call Mims or seek the admission of his unreliable and self-serving affidavits satisfies that standard. Accordingly, Petitioner's first claim does not entitle him to habeas relief.

### B.  Loss of Peremptory Challenges During Jury Selection

Petitioner next argues that he was denied a fair trial when the trial court declared a jury while the defense still held ten peremptory challenges. The Michigan Court of Appeals agreed that the trial court erred, describing the circumstances as follows:

> In this case, 14 prospective jurors were selected from the venire. Following voir dire, the trial court excused one juror for cause, the prosecutor exercised one peremptory challenge, the defense exercised two peremptory challenges, and four new prospective jurors were called. After further voir dire, both parties passed for cause, the prosecutor passed on peremptory challenges, and the defense exercised one peremptory challenge. Rather than select a replacement and continue with voir dire, the trial court stated that the case would proceed with the 13 remaining jurors.

*Lewis*, 2016 WL 3429683, at *5.

Nevertheless, the Court of Appeals correctly observed that Petitioner's claim did not raise a constitutional challenge, but one based on "a statutory or court-rule-based right to exclude a certain number of jurors." *Id*. Because Petitioner "did not actually express any dissatisfaction" with the seated jury, nor did he provide any basis to find that it was other than fair and impartial, the Court of Appeals held that Petitioner was not prejudiced by this error and held that the error was harmless. *Id*. This court agrees.

12

The United States Supreme Court has long held that such an error does not violate a criminal defendant's constitutional rights. "Because peremptory challenges are within the States' province to grant or withhold, the mistaken denial of a state-provided peremptory challenge does not, without more, violate the Federal Constitution." *Rivera v. Illinois*, 556 U.S. 148, 158 (2009); *accord, Georgia v. McCollum*, 505 U.S. 42, 57 (1992) ("This Court repeatedly has stated that the right to a peremptory challenge may be withheld altogether without impairing the constitutional guarantee of an impartial jury and a fair trial"); *Stilson v. United States*, 250 U.S. 583, 586 (1919) ("There is nothing in the Constitution of the United States which requires the Congress to grant peremptory challenges."). Thus, Petitioner is not entitled to habeas relief on his claim that he was denied his right to exercise all of his peremptory challenges. He has also failed to demonstrate either deficient attorney performance or prejudice related to this claim.

Petitioner's motion to amend relates to this second claim. In the motion, Petitioner states that he "recently discovered" that his trial judge was reprimanded in 2014 for misconduct in another, unrelated case. (ECF No. 12, PageID.979.) Petitioner contends that the judge's conduct that earlier case demonstrates his judge's "propensity" to deny Petitioner due process. (*Id.*) Putting aside issue of procedural default, Petitioner fails to explain how the judge's conduct in a separate and unrelated case violated his due process rights in the instant matter. Generalized complaints of judicial misconduct—especially complaints stemming from *other* cases—will seldom, if ever, rise to the level of constitutional deprivation cognizable on collateral review. *See, e.g.*, *Bracy v. Gramley*, 520 U.S. 899, 904 (1997) ("Of course, most questions concerning a judge's qualifications to hear a case are not constitutional ones."); *Duckett*

13

*v. Godinez*, 67 F.3d 734, 740 (9th Cir. 1995) (internal citations and quotations omitted) ("The standard for reversing a verdict because of general judicial misconduct during trial is rather stringent . . . there must be an extremely high level of interference by the trial judge which creates a pervasive climate of partiality and unfairness."). To the extent Petitioner's motion to amend presents any additional argument related to his second claim for habeas relief, it is without merit.

### C. Admission of Photographs of the Deceased Victim

Finally, Petitioner argues that he was denied a fair trial due to the introduction of photographs of the victim taken in the morgue. The state court of appeals held that the trial court did not abuse its discretion in admitting the photographs because they "were relevant and were not so gruesome as to divert the jury's attention from the actual issues in the case[.]" *Lewis*, 2016 WL 3429683, at *7.

Petitioner's claim that the admission of the photographs denied him due process lacks merit. In general, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2005) (citing *Roe v. Baker*, 316 F.3d 557, 567 (6th Cir. 2002)). Whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68. (1991).

No clearly established Supreme Court law prohibits the introduction of such photographs at a murder trial. *See, e.g., Franklin v. Bradshaw*, 695 F.3d 439, 456–57

(6th Cir. 2012); *Biros*, 422 F.3d at 391; *Frazier v. Huffman*, 343 F.3d 780, 789 (6th Cir. 2003). Where there is a legitimate, evidentiary purpose for the admission of the photographs, the admission of gory or gruesome photographs of a murder victim does not entitle a petitioner to habeas relief. *Biros*, 422 F.3d at 391.

Here, the prosecutor offered the photographs of the victim's gunshot wounds to the head for the legitimate evidentiary purpose of demonstrating Petitioner's intent to kill. (ECF No. 10-10, PageID.212.) The court finds to be reasonable the determination by the Michigan Court of Appeals that the trial court did not abuse its discretion in admitting the photographs. Petitioner's third claim for relief is denied.

## IV.   CERTIFICATE OF APPEALABILITY

Before Petitioner may appeal the court's decision, a certificate of appealability must issue. 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved differently or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal citation and quotation marks omitted). The court will decline to issue a certificate of appealability because it determines that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted.

## V.   CONCLUSION

Petitioner is not entitled to habeas corpus relief on any of the claims raised in his

petition or his motion to amend. Accordingly,

IT IS ORDERED that the Petition for Writ of Habeas Corpus (ECF No. 1) is

DENIED.

IT IS FURTHER ORDERED that a certificate of appealability is DENIED.

s/Robert H. Cleland                    /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  May 11, 2020

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, May 11, 2020, by electronic and/or ordinary mail.

s/Lisa Wagner                    /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C1 ORDERS\17-14174.LEWIS.2254.PS.HEK.RHC.docx